719 P.2d 1231

Bob HERBST, Sue Herbst, Allan McGinnis, Elizabeth McGinnis, Lydia A. Liggett and Food Formulations International, Inc., Plaintiffs-Respondents,

v.

BOTHOF DAIRIES, INC., Defendant-Appellant,

and

Gary D. Bothof and Gertrude E. Bothof, and Wall-Grin, Inc., Defendants,

No. 16084.

Court of Appeals of Idaho.

May 30, 1986.

972

Brent T. Robinson (argued), and David W. Haley, Ling, Nielsen & Robinson, Rupert, for defendant-appellant.

John J. Healzer, Jerome, for plaintiffs-respondents.

BURNETT, Judge.

This is a lawsuit filed by cattle owners who leased their livestock to a dairy. The owners claimed and a jury found that the cattle had been furnished inadequate care, reducing their market value. Although damages were awarded against an agent of the dairy, the jury made no finding of liability against the dairy itself. However, the district court entered judgment n.o.v., extending liability to the dairy as well.

On appeal the primary issue is whether the dairy should have been held liable. We also are asked to decide whether this question should have been raised at trial before the jury was discharged, rather than raising it later in a motion for judgment n.o.v. Finally, we must determine whether it was appropriate for the district court to award attorney fees to the cattle owners as prevailing parties in the litigation. For reasons explained below, we affirm the judgment n.o.v. but reverse the attorney fee award.

The facts necessary to our opinion are as follows. Gary and Gertrude Bothof started a dairy, operating it with cattle leased from Bob Herbst and other livestock owners. Several months after the leases had been signed, the Bothofs incorporated their enterprise, naming it Bothof Dairies, Inc. Although the leases were not formally assigned to the corporation, it is undisputed that the corporation assumed the obligation to perform them. The Bothofs became officers and directors of the corporation.

Meanwhile, the dairy began to experience cash flow problems. Wall-Grin, Inc., a Wyoming corporation, offered to provide financial and managerial assistance. In a transaction loosely—and perhaps inaccurately—termed a "merger," the Bothofs and their corporation transferred all shares of stock to Wall-Grin. In return Wall-Grin

agreed to furnish money for the dairy operation and to oversee the dairy's financial management. The Bothofs remained officers and directors of Bothof Dairies, Inc.

Wall-Grin performed the financial and management functions through its president, Richard Grindle. During Grindle's tenure, insufficient expenditures were made on the dairy operation. The cattle did not receive the feed or veterinary services they needed. Eventually, the cattle owners repossessed the animals, sold them at a loss, and sued to recover for the diminution of value.

The jury returned an interrogatory verdict in favor of the cattle owners. The jury found that Wall-Grin had been negligent, and had breached the lease agreements, in its financial management of the dairy operation. The jury also found that Wall-Grin's president, Grindle, had been an agent for Bothof Dairies, Inc. However, the jury failed to find that Bothof Dairies had been negligent or had breached the leases. Neither did the jury make any such findings against Gary or Gertrude Bothof individually. As noted earlier, the district court entered judgment n.o.v., imposing liability upon Bothof Dairies as well as upon Wall-Grin. The court also awarded attorney fees to the cattle owners. Bothof Dairies then brought this appeal.[1]

## I

We first consider Bothof Dairies' contention that it should not have been held liable in the judgment n.o.v. A motion for judgment n.o.v. should be granted only when the verdict is unsupported by substantial evidence viewed in the context of applicable law. *Brand S Corporation v. King*, 102 Idaho 731, 639 P.2d 429 (1981); *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979). Here, the applicable law is that which governs the allocation of liability between agents and their principals.

The threshold inquiry is whether Wall-Grin was an agent of Bothof Dairies. Agency is a relationship resulting from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." RESTATEMENT (SECOND) AGENCY § 1, at 7 (1958) (herein cited as the *Second Restatement*). Through the "merger" agreement, Bothof Dairies contracted with Wall-Grin to provide funds and financial management. The agreement plainly manifested "consent" by Bothof Dairies for Wall-Grin to act on its behalf. But was Wall-Grin subject to any right of "control" by Bothof Dairies? A right of control must be distinguished from actual control. In an agency relationship,

> the principal has power to revoke the agent's authority, although this would constitute a breach of contract with him.... The control of the principal does not, however, include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective.

*Second Restatement* § 14, comment a (1958); *see Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970). Thus, the concept of control in a principal-agent relationship is broad. A right of control may exist despite the lack of its exercise.

Here, the right of control existed. Wall-Grin was obligated by contract to provide money and proper financial management. Bothof Dairies, whose officers and directors remained unchanged after the "merger," legally was in a position to enforce the contract. That it failed to do so, or that the exercise of such control might have been ineffective, does not derogate from the existence of the right to control. We conclude that the evidence, viewed in light of these rules of law, would compel a finding that Wall-Grin was Bothof Dairies'

---

1. The purpose of the appeal would be obscure if all shares of Bothof Dairies was still owned by Wall-Grin, whose liability has not been challenged. However, we surmise from comments of counsel at oral argument that the future of the "merger" is in doubt and that Bothof Dairies may again become a wholly independent entity. Consequently, we presume that Bothof Dairies has a genuine economic stake in determining the extent of its own liability.

agent as far as financial management was concerned. This conclusion is consistent with the jury's express finding that Wall-Grin's president, Grindle, also was an agent of Bothof Dairies.

In light of these relationships, the next inquiry is whether the jury rationally could have found that Bothof Dairies had no direct liability, nor any imputed liability, for failure to take adequate care of the leased cattle. Such liability could arise in tort or in contract for breach of the lease agreements.

■ Bothof Dairies has argued that no imputed tort liability could be found because à principal is liable only for the negligent acts of an agent "whose *physical conduct* in the performance of the service is controlled or is subject to the right of control...." *Second Restatement* § 2(2) (1958) (emphasis added). This is a greater degree of control, or of right to control, than is necessary to establish a principal-agent relationship. It is more akin to the control found in a master-servant relationship.[2] *Weber v. Stokely-Van Camp, Inc.*, 274 Minn. 482, 144 N.W.2d 540 (1966); *Arsand v. City of Franklin*, 83 Wis.2d 40, 264 N.W.2d 579 (1978). The evidence tends to support Bothof Dairies' contention that neither Wall-Grin nor Grindle was under Bothof Dairies' "physical control." Neither did the jury find that any master-servant relationship existed.

■ However, the lack of imputed liability does not end our inquiry. Even where "physical control" and a master-servant relationship do not exist, a principal may be directly liable for harm that occurs when an agent performs a nondelegable task that the "principal is under a duty to perform with care." *Second Restatement* § 251(a) (1958); *see McLean v. St. Regis Paper Co.*, 6 Wash.App. 727, 496 P.2d 571 (1972). On this point the issues of tort liability and contract liability coalesce. Bothof Dairies, having undertaken performance of the cattle leases, assumed a contractual obligation to provide adequate care for the livestock. This obligation was coextensive with Bothof Dairies' duty in tort to exercise reasonable care concerning property entrusted to its possession. Although performance of these duties might be undertaken by others, such as Wall-Grin, the duties themselves, and their attendant liabilities, could not be delegated.

We conclude that the evidence, even when viewed in best light for Bothof Dairies, fails to support the jury's finding that Bothof Dairies breached no contract and violated no duty of care. Bothof Dairies' liability is manifest. The district court correctly so held in entering judgment n.o.v.

## II

■ Bothof Dairies next contends that the underlying difficulty with the jury's verdict was not that it was unsupported by substantial evidence or that it erroneously applied the law to the facts, but simply that it was contradictory. This argument concedes that the jury acted inconsistently by finding Wall-Grin liable, and by finding Wall-Grin's president to be Bothof Dairies' agent, but by failing to find Bothof Dairies liable. Bothof Dairies would have us hold that such an inconsistency must be identified and raised before the jury is discharged, rather than seeking relief by a judgment n.o.v.

Our attention is invited to *Pedersen v. Moore*, 32 Idaho 420, 184 P. 475 (1919). In that case our Supreme Court held that if there is an irregularity in a jury verdict, it should be raised before the jury is discharged so the jurors will have an opportunity to correct it. The Supreme Court may have been influenced by I.C.A. § 7–218, later codified as I.C. § 10–218. The statute then provided: "When the verdict is announced, if it is informal or insufficient in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out." This statute was repealed in 1975, when the Legislature gave its sanction to

---

2. Every master is a principal but not every principal is a master. Likewise, every servant is an agent, but not every agent is a servant. *Second Restatement* §§ 1, 2 (1958).

the court-adopted Idaho Rules of Civil Procedure. The subject now is governed by I.R.C.P. 49(b), which refers to general verdicts accompanied by answers to interrogatories.

In any event, the thrust of the statute, and ultimately of the rule, appears to be that a verdict can be displaced by a judgment n.o.v. only if the verdict is unsupported by substantial evidence, not if it is merely inconsistent. *See Judd v. Oregon Short Line Railroad Co.*, 55 Idaho 461, 44 P.2d 291 (1935). Here, as the foregoing discussion has demonstrated, the verdict was not merely inconsistent. With respect to Bothof Dairies, the verdict was unsupported by substantial evidence when viewed in the legal framework of principal-agent relationships. Accordingly, we hold that judgment n.o.v. was properly requested and granted.

### III

The last issue concerns an award of attorney fees at trial. The district court awarded fees against Bothof Dairies because, in the judge's estimation, the lawsuit had been defended "frivolously." The judge made no detailed findings, and offered no explanation as to why he thought the defense was frivolous, except for the obvious fact that the defense ultimately was unsuccessful.

An award of attorney fees under I.C. § 12–121 is discretionary. The standard for determining whether such an award should be made is not whether the position urged by the nonprevailing party is ultimately found to be wrong, but whether it is so plainly fallacious as to be frivolous. *Gulf Chemical Employees Federal Credit Union v. Williams*, 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984); *Wing v. Amalgamated Sugar Co.*, 106 Idaho 905, 684 P.2d 307 (Ct.App.1984). In this case, the cattle owner's loss was clearly established. But the allocation of liability for the loss turned upon the application of agency principles to complex facts and to an unusual configuration of individual and corporate entities connected with the dairy operation. Indeed, the jury found in Bothof Dairies' favor, albeit incorrectly. We conclude that the defense was not so plainly fallacious as to be frivolous. The district court abused its discretion by awarding attorney fees under I.C. § 12–121.

In summary, the judgment n.o.v. is affirmed but the award of attorney fees at trial is reversed. The cattle owners, having substantially prevailed on appeal, are awarded their costs. However, because the appeal has not been brought or defended frivolously, unreasonably or without foundation, the parties shall bear their own attorney fees.

WALTERS, C.J., and McFADDEN, J. Pro Tem., concur.