779 P.2d 414

Canuto R. CARDENAS and Lucia Cardenas, husband and wife, Plaintiffs–Appellants,

v.

Helen KURPJUWEIT, Defendant–Respondent,

and

Julius Kurpjuweit, and all other persons whose true names are not known, Defendants.

No. 17568.

Supreme Court of Idaho.

Aug. 29, 1989.

Ismael Chavez, Caldwell, for plaintiffs-appellants.

Manweiler, Bevis & Cameron, Boise, for defendant-respondent.

BISTLINE, Justice.

We granted review of the Court of Appeals decision to determine whether a landowner's claim of a prescriptive easement will be defeated as a matter of law because the landowner has labored under the mis-

taken view that the ingress-egress to her property was over a road which was open to the public.

## PART I

■ The facts which underlie this dispute are sufficiently set out in the Court of Appeals decision and an illustrative sketch is found of the involved properties and the roadway in question is found at 114 Idaho at 81, and at 753 P.2d at 293. Briefly stated, the Court of Appeals held that, in determining whether a private prescriptive easement is established, a subjective belief entertained by the claimant is of no moment. More simply put, because the claimant mistakenly believes the property over which she traverses to reach her home is a public roadway, a claim of a private prescriptive easement is not necessarily defeated. The Court of Appeals stated the principle involved very neatly:

> The Cardenases assert that a private prescriptive easement in a roadway cannot be established where the claimant believes that the roadway is public. *See Cusic v. Givens,* 70 Idaho 229, 215 P.2d 297 (1950); *Hall v. Strawn,* 108 Idaho 111, 697 P.2d 451 (Ct.App.1985). This argument is not entirely accurate. The subjective belief of the claimant is not controlling; rather, the focus is upon the nature of the use exercised by the claimant. Where the same use has been exercised indiscriminately by the public or by others in common, the individual claimant is prevented from claiming an exclusive use [1] in the sense that it is proprietary in nature and exercised independently of the rights of all others. *Hall v. Strawn, supra.*

114 Idaho at 82–83, 753 P.2d 293–94 (footnote added).

Judge Burnett took pains to convincingly demonstrate in his special concurrence that the above-quoted principle is arguably at odds with language in earlier Idaho case precedent:

1. We do not understand that Mrs. Kurpjuweit's claim to a prescriptive use of the roadway into her property is to the exclusion of others, or that she is entitled to use it independent of the rights of others. It is our understanding that another neighbor, Hazel Elliott, made similar use of the roadway over an even longer period of time.

Although I join in today's opinion, I acknowledge that it contains some language arguably contrary to a statement found in *French v. Sorensen,* 113 Idaho 950, 751 P.2d 98 (1988). In that case the Supreme Court quoted and adopted the following excerpt from a district judge's memorandum decision:

[Plaintiffs assert] a rather straightforward claim of prescriptive right of way across defendant's property. However, here plaintiffs' use of the road upon the defendants' ranch was *based upon their conception that the road was a public road. If they thought it a public road, their use could not be proprietary in nature.*

113 Idaho at 958, 751 P.2d at 106 (emphasis added). In contrast, today's opinion contains the following language: *'The subjective belief of the claimant is not controlling; rather, the focus is upon the nature of the use exercised by the claimant.' Ante,* 114 Idaho at 82, 753 P.2d at 293.

With due respect to our Supreme Court, I submit that today's language better states the law. The excerpt quoted by the Supreme Court in *French* was followed by a citation to three earlier decisions: *Hall v. Strawn,* 108 Idaho 111, 697 P.2d 451 (Ct.App.1985); *Cusic v. Givens,* 70 Idaho 229, 215 P.2d 297 (1950); and *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941). I will discuss these decisions in chronological order.

*Simmons* involved a fact pattern similar to the instant case. The plaintiff asserted a prescriptive easement coinciding with what appeared to be an alley across the defendants' property. This 'alley' had been used regularly by the defendants and by members of the general public, including the plaintiffs. The Supreme Court noted that absent an express grant of permission, the regular crossing of another's property is generally presumed to be an adverse use. However, as an exception to this general rule, the *Simmons* court held that where the owner 'constructs a way over [the land] for his own use and convenience, the

mere use thereof by others which in no way interferes with his use will be presumed to be by way of license or permission.' 63 Idaho at 144, 118 P.2d at 744. The Court further said that a claimant who uses a road in common with the public, and who does not undertake any 'decisive act ... indicating a separate and exclusive use on his part,' falls within this presumption of permission. *Id.* Accordingly, his use is not adverse to the landowner and cannot ripen into a prescriptive easement.

In *Cusic v. Givens, supra,* the Supreme Court applied the *Simmons* principle to a rural setting. The plaintiffs asserted a prescriptive easement across the defendants' farm, following the route of what appeared to be a public road. The road had been used not only by the defendants and their predecessor but also by the plaintiffs, their predecessor, and other members of the public. The Supreme Court noted that this use had been 'entirely permissive.' 70 Idaho at 231, 215 P.2d at 298. The Court went on to observe that the record contained no other indication of adverse use and that the plaintiffs had used the road simply because they thought it was public. The Court concluded that '[a] prescriptive right cannot be acquired by such use.' *Id.* The Court cited *Simmons* as well as a host of other authorities discussing actual or presumptive permission.

In retrospect, it is unfortunate that *Cusic* juxtaposed a reference to the plaintiffs' belief in a public road with the ambiguously worded conclusion that a prescriptive right cannot be acquired by 'such use.' In full context, it is apparent that 'such use' was intended to mean the 'entirely permissive' use previously mentioned by the Court. This intended meaning is reinforced by the Court's citation of *Simmons* and other authorities dealing with permissive uses.

Nevertheless, as a result of such juxtaposed and ambiguous language, *Cusic* came to be regarded as the source of a new doctrine—that the adversity of a claimant's use may be defeated by his

own belief that a road is public. In *Hall v. Strawn, supra,* a special panel of the Court of Appeals quoted at length from *Cusic,* giving emphasis to the juxtaposed and ambiguous language. Although much of *Hall's* analysis was consistent with *Simmons, Hall* did not specifically mention the presumption *of permissiveness arising from common usage of an existing roadway.* Rather, *Hall* focused upon the plaintiff's belief that he had been using a public road. On this basis the Court concluded that the plaintiff had not acquired a prescriptive easement along the road. *Hall* set the stage for the declaration in *French v. Sorensen, supra,* that no prescriptive easement can arise from a use based upon the conception that a road is public.

As this chronology shows, a misunderstanding caused by unfortunate language in *Cusic* has produced the curious doctrine that a claimant's subjective state of mind may determine whether he is entitled to a prescriptive easement. This state of mind doctrine is illogical. The 'adversity' of a claimant's use lies in its derogation from the exclusive rights of the landowner; it does not lie in the claimant's state of mind. Regardless of the motive with which a prospective claimant crosses a landowner's property, his use derogates from the landowner's rights unless the crossing is by permission, express or legally presumed. Moreover, the state of mind doctrine creates a perverse incentive to offer contrived but virtually unrebuttable testimony. A sophisticated claimant, aware of the *Hall* and *French* decisions, would never admit having thought a road was public; he would simply testify that he used the road because he found it convenient.

Accordingly, I agree with today's opinion that the adversity of a claimant's use is determined not by his subjective belief but by the nature of the use itself. As the Washington Supreme Court has noted:

[T]here is little persuasive precedent for applying a subjective standard of adverse use in prescriptive easement cases. The gravamen of adversity in such cases is whether the user has occupied the property in a manner which is adverse to the true owner. Although subjective intent may have some relevance in an adverse possession case where the user claims title, the claim in a prescriptive easement case is merely to [a] use which could have been prevented by the rightful owner. We therefore hold that adversity is to be measured by an objective standard; that is, by the objectively observable acts of the user and the rightful owner.

*Dunbar v. Heinrich,* 95 Wash. 2d 20, 622 P.2d 812, 815–16 (1980) (citations and footnote omitted).

114 Idaho at 83–85, 753 P.2d 294–96 (Burnett, J. specially concurring) (footnotes omitted) (emphasis by underscoring added, italics in original). We agree with the views of the Court of Appeals and Judge Burnett. Accordingly, we expressly do that which the Court of Appeals would have done had it been so empowered; *Cusic, Hall,* and *French,* in so far as they stand for the erroneous proposition that the claimant's state of mind is relevant in determining whether a private prescriptive easement has been established, are hereby overruled.

Our decision today does no violence to the fundamental principles defining the requirements of a prescriptive easement. With reasonably clear and convincing evidence a claimant must establish an open, notorious, continuous, uninterrupted use for the five year statutory period,[2] under a claim of right, with the actual or imputed knowledge of the property owner. *Cardenas I,* 114 Idaho at 82, 753 P.2d at 293; *Hall,* 108 Idaho at 112, 697 P.2d at 452; *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973); *Deer Creek, Inc. v. Hibbard,* 94 Idaho 533, 493 P.2d 392 (1972); *Northwestern & Pac. Hypotheekbank v. Hobson,* 59 Idaho 119, 80 P.2d 793 (1938); *Last Chance Ditch Co. v. Sawyer,* 35 Idaho 61, 204 P. 654 (1922). *See Flynn v. Korsack,* 343

---

**2.** I.C. § 5–203 provides for a prescriptive period of five years.

Mass. 15, 175 N.E.2d 397 (1961) (uncommunicated mental attitude of claimant irrelevant).

## PART II

■ Our holding in Part I now enables us to divorce the two grounds urged by Kurpjuweit as to the basis of her claim to a prescriptive right-of-way. Discounting as irrelevant her testimony that she believed that ingress and egress to her residential property was over a public road, we uphold and affirm the findings of fact and order rendered by the district court on January 20, 1986. We particularly take note of the district court's finding number 28 which recites a stipulation of the parties that Kurpjuweit's use (and also the use of Hazel Elliott) was not under any grant of permission from the Cardenases; hence the findings sustain the district court's conclusion that Kurpjuweit met her burden of proving a prescriptive easement by evidence which is reasonably clear and convincing of an open and notorious use under a claim of right, with the knowledge of the Cardenases for more than five years.

We also take particular note that the Cardenas' complaint which initiated this litigation alleged:

### II.

On or about December 20, 1983, Plaintiffs obtained a building permit from the City of Nampa, State of Idaho, to erect a fence on their property. Thereafter Plaintiffs did construct and erect a chain link fence along the northern boundary of their property.

. . . .

### III.

Sometime in September, 1984, the defendants willfully, maliciously, wantonly, and without any justification whatsoever destroyed the fence, digging out the cement foundations and tearing down the fence; plaintiffs desire to rebuild the fence and the actions by the defendants are of such nature that they should be permanently enjoined and restrained from further destruction of plaintiff's property.

R., Vol. 1, 1–2.

The fence in question interfered with ingress and egress to the properties of Helen Kurpjuweit and Hazel Elliott, as well as their parking of vehicles. We believe that tearing down the Cardenas' fence was the sufficient evidence of performing some additional independent act signifying to the owner that there is an adverse user's claim, which the Court of Appeals thought necessary. We also see testimony in the record sustaining the district court's findings numbers 17 and 18, that Helen Kurpjuweit since 1957 has used the disputed area as a roadway, and applied gravel thereon to keep weeds from growing in that portion used as a vehicle parking area for the use of herself and her visitors.

The judgment of the Court of Appeals reversing the district court judgment which declared a prescriptive easement including the award of attorney fees is vacated. The judgment of the district court declaring a prescriptive easement in favor of Helen Kurpjuweit and enjoining the Cardenases from interfering therewith is affirmed.

■ There remains for disposition the order of the trial court which awarded attorney fees to be paid to Helen Kurpjuweit by Canuto and Lucia Cardenas. That award was reversed by the Court of Appeals in reversing the underlying judgment. Our affirmance of the district court's judgment (and vacating of the Court of Appeals judgment) would ordinarily reinstate the award of attorney fees. However, in taking their appeal the Cardenases specifically challenged the grant of attorney fees.

In its written Memorandum Decision the district court in Conclusions of Law (4) and (5) ruled:

The defendant/counter-claimant [Kurpjuweit] is the prevailing party on the [her] counterclaim. The plaintiffs/counter-defendants defended the counterclaim frivolously, unreasonably and without foundation.

R., Vol. 2, 46.

The order of the district court dated January 20, 1986, in addition to enjoining the

744

Cardenases from certain acts and to do certain acts, ordered that Helen Kurpjuweit was awarded her costs and attorney fees. The judgment was prepared by counsel for Kurpjuweit as directed by the court in its written decision. Signed by the presiding judge on the 28th day of January 1986, the judgment awarded $70 in cost "together with reasonable attorney fees in the sum of $2265." The judgment was entered of record on the 29th day of January 1986. Also filed with the clerk of the court on the same day on which the judgment was filed, but one hour and five minutes later, was Kurpjuweit's Memorandum of Costs and Attorney Fees, detailing the number of hours and the prevailing rate for each of the two attorneys representing Mrs. Kurpjuweit at 21.9 hours at $100 per hour, and 1.3 hours at $60 per hour.

On February 3, 1986, the Cardenases served and filed their objection to the award of attorney fees, doing so by moving for an order disallowing part or all of the same. The record does not show that a hearing was ever heard on the motion challenging the award of attorney fees.

In their opening appellate brief the Cardenases recite the foregoing facts and assert additionally that "unbeknownst to [them] the trial court had already entered judgment on the same day the memorandum of Kurpjuweit was filed, making their filing of an objection and the right thereto an exercise in futility." They argue that the court did not make specific findings supporting the conclusion that they, the Cardenases, defended Kurpjuweit's claim frivolously, unreasonably, and without foundation. Their brief brings to our attention the following cases, statutes, and rules: *Matter of Estate of Kunzler*, 109 Idaho 350, 707 P.2d 461 (Ct.App.1985); *Gulf Chemical Employees v. Williams*, 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984); Idaho Code § 12–121; *Herbst v. Bothof Dairies, Inc.*, 110 Idaho 971, 719 P.2d 1231 (Ct.App.1986); Rule 54(e)(5), I.R.C.P.; Rule 54(e)(6), I.R.C.P.; and Rule 54(e)(7), I.R. C.P.

We observe only that the state of Idaho case law precedent was such then that the

Court of Appeals determined that it had to reverse the judgment of the district court as a matter of law in light of certain decisions of this Court mentioned by that court, and examined more fully in the specially concurring opinion of Judge Burnett. Further, observing that the award of attorney fees at the trial court level is a matter best determined by that court, we vacate the district court's award made in January of 1986, with directions that on remand the district court conduct further proceedings relative thereto.

Costs awarded to Helen Kurpjuweit in Court of Appeals Case No. 16397, and in Supreme Court No. 17568.

BAKES, C.J., and JOHNSON, J., concur.

SHEPARD, J., sat, but did not participate in this opinion due to his untimely death.

HUNTLEY, J., participated but resigned from the Court before the consensus was reached which is reflected in our opinion.