76 P.3d 969

Marvenna S. HODGINS; Duane, Joan K. and Kim J. Cover; Leslie Roundy; Nathan A. Seybold, Tim and Gina Wolfe Seybold; Virden and Elva Seybold; and Elizabeth Von Schoonhoven, Plaintiffs–Respondents,

v.

John P. and Joyce E. SALES, Defendants–Appellants.

No. 28559.

Supreme Court of Idaho, Boise, May 2003 Term.

Aug. 27, 2003.

Neal & Uhl, PLLC, Boise, for appellants. Gary L. Neal argued.

Bevis, Cameron & Johnson, Boise, for respondents. Michael R. Johnson argued.

TROUT, Chief Justice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a real property case. Respondents, Marvenna S. Hodgins; Duane, Joan K., and Kim J. Cover; Leslie Roundy; Nathan A. Seybold; Tim and Gina Wolfe Seybold; Virden and Elva Seybold; and Elizabeth Von Schoonhoven (the Property Owners) assert easement rights to a road through the Appellants, John P. and Joyce E. Sales (the Sales), real property.

The real property in question is located in Boise County in an area commonly known as "Mack's Creek." The Mack's Creek area consists of approximately 160 to 200 acres of land. The road at issue runs from a bridge at the confluence of Mack's Creek and Grimes Creek, from Forest Service land through the Mack's Creek area and back to Forest Service land. The road is closed to the public by a gate at the bridge. At issue is the uppermost parcel of the Mack's Creek area served by the road, which is owned by the Sales. The Property Owners argue they have an easement right to pass over and through the Sales' parcel to access adjacent federal lands.

Most of the Property Owners claim they use the road intermittently to access recreational pursuits on the Forest Service land. However, Property Owner, Marvenna Hodgins, claims she uses the road more frequently to access an electrical power generator located on Forest Service land.

The evidence produced at trial indicates the Mack's Creek area was originally a homestead acquired by Edward Jump in 1921. This parcel remained intact through the following chain of title: Edward Jump to the Wisemans in 1922, the Wisemans to the Smiths in 1945, the Smiths to the Lockwoods in 1951, the Lockwoods to the Andrews in 1970. The Andrews subsequently divided the property and sold it in a number of separate parcels some of which were later divided further.

Sometime in the mid–1980's, Floyd Audette (Audette), a previous property owner in the Mack's Creek area and Marvenna Hodgins' immediate predecessor in interest, built a small hydroelectric power project on the Forest Service land. This facility provides electricity to the parcel now owned by Marvenna Hodgins. The project includes a diversion and a power generating plant, which are accessed via the road over the Sales' property. The diversion must be accessed frequently, sometimes twice a day, for maintenance.

In 1991, Property Owner, Tim Seybold, began maintaining the full length of Mack's Creek Road on behalf of a number of landowners in the Mack's Creek area. In 1994, the landowners began keeping records of the amounts collected and paid for such road maintenance. In 1995, these landowners formally incorporated the Mack's Creek Property Owner's Association and began collecting dues and road maintenance fees through this organization. Tim Seybold maintained the full length of Mack's Creek Road on behalf of the Mack's Creek Property Owners' Association through at least 1999.

The Sales purchased the subject property on December 29, 1997, by warranty deed from the Lees and McGraws. This deed does not identify the easement at issue but specifies the property is subject to easements of record. The warranty deed through which the Lees obtained the property from the Andrews, identifies the property as "[s]ubject to the easement for the existing road going through the property."

In August 1999 the Sales placed a locked gate across the road at the point where the road enters their property. The placement of the gate precipitated this lawsuit.

At a bench trial, the district judge heard testimony from each of the Property Owners but none of the earlier predecessors in interest testified. The district judge ultimately denied the claimed express easement and granted the claimed prescriptive easement

for use of the road through the Sales' property. The Sales appeal the district judge's finding of a prescriptive easement, and the Property Owners argue the district judge's judgment can be upheld on either a theory of easement by prescription or an express easement.

## II.

## STANDARD OF REVIEW

A district court's decision that a claimant has established a private prescriptive easement involves entwined questions of law and fact. *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). On appeal, this Court will not set aside findings of fact, unless they are clearly erroneous. *Id.* (citing I.R.C.P. Rule 52(a)). If a district court's findings of fact are supported by substantial and competent, though conflicting, evidence, this Court will not disturb the findings. *Marshall v. Blair*, 130 Idaho at 679, 946 P.2d at 979. Furthermore, this Court gives due regard to the district court's special opportunity to judge the credibility of the witnesses who personally appear before the court. *Id.* (citing I.R.C.P. Rule 52(a)). In contrast, this Court exercises free review over the district court's conclusions of law. *Marshall v. Blair*, 130 Idaho at 679, 946 P.2d at 979.

## III.

## DISCUSSION

**A. The District Judge Erred in Holding the Property Owners Were Entitled to a Prescriptive Easement Over the Sales' Property.**

An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991). To establish an easement by prescription, the claimant must prove by clear and convincing evidence use of the subject property, which is characterized

as: (1) open and notorious; (2) continuous and uninterrupted; (3) adverse and under a claim of right; (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period. *See* I.C. § 5–203; *Baxter v. Craney,* 135 Idaho 166, 173, 16 P.3d 263, 270 (2000). Each element is essential to the claim, and the trial court must make findings relevant to each element in order to sustain a judgment on appeal. The trial court below made findings that the Property Owners use of the road was open and adverse, but did not make specific findings with respect to the remaining elements. Without such findings, the decision is in error.

In addition, where there is more than one claimant to a prescriptive easement, the trial court must make findings sufficient to support each claim. The easement alleged is best described as a shared, private right of way.[1] Further, it is permissible for a trial court to make findings of fact common to all property owners asserting prescriptive rights in the same property. *Walker v. Hollinger,* 132 Idaho 172, 173, 968 P.2d 661, 662 (1998). Nonetheless, where, as here, the claimants purchased their property at different times and used the subject property for different purposes and with different frequency, the trial court must make findings specific to each Property Owner's claim. Such findings are necessary, in part, because prescriptive rights are defined by the actual prescriptive use of the property over the statutory period. *See Loosli v. Heseman,* 66 Idaho 469, 475, 162 P.2d 393, 399 (1945). Therefore, the district judge must make findings of fact relating to each claimant, at least in order to define the scope of the right acquired by each Property Owner. Again, without such findings, the decision is in error.

**B. The District Judge Correctly Treated the Alleged Easement as an Easement Appurtenant and Evidence of Tacking was Appropriately Considered.**

Because the Property Owners have argued for an easement inextricably

---

1. The Property Owner's alleged easement is a right of way over and through the uppermost portion of a private road located on the Sales' property in order to access adjacent federal lands. Because the road is an extension of a private road closed to the public by use of a gate and the rights alleged are shared by the Property Owners, who all possess property in the Mack's Creek area, the easement alleged is best described as a shared private right of way.

tied to their ownership of property in the Mack's Creek area, they have argued for an easement appurtenant. There are two general types of easements: easements appurtenant and easements in gross. An easement appurtenant is a right to use a certain parcel, the servient estate, for the benefit of another parcel, the dominant estate. *Abbott v. Nampa School Dist. No. 131*, 119 Idaho at 550, 808 P.2d at 1295. Essentially, an easement appurtenant serves the owner of the dominant estate in a way that cannot be separated from his rights in the land. *Id.* When an appurtenant easement is created, it becomes fixed as an appurtenance to the real property, which is subject to the prescriptive use and may be claimed by a successor in interest. *Marshall v. Blair*, 130 Idaho at 680, 946 P.2d at 980. In contrast, an easement in gross benefits the holder of the easement personally, without connection to the ownership or use of a specific parcel of land. *King v. Lang*, 136 Idaho 905, 909, 42 P.3d 698, 702 (2002). Thus, easements in gross do not attach to property. *Id.* In cases of doubt, Idaho courts presume the easement is appurtenant. *Nelson v. Johnson*, 106 Idaho 385, 387–388, 679 P.2d 662, 664–665 (1984).

■ The easement at issue is appropriately characterized as an easement appurtenant. Each of the Property Owners argued for an easement based on their ownership of property in the Mack's Creek Area. The Property Owners testified that they purchased their property based on access to public lands via the road traversing the Sales' property. In addition, based on their testimony, it appears the Property Owners would not have used the Sales' property but for their ownership of property in the Mack's Creek area and their belief that they had a reciprocal easement for the purpose of using the road. Therefore, while there was some testimony presented regarding the use of the Sales' property by others to access the public lands, each of the Property Owners' claims is tied fundamentally to the Property Owners' ownership of land in the Mack's Creek area.

For the above reasons, it was reasonable for the district judge to treat the Property Owners' claimed easement as an easement appurtenant to the land as opposed to an easement in gross. Further, because the easement is appurtenant to the Property Owner's property, evidence of tacking was permissible in establishing prescriptive use for the statutory period.

The Sales argue, however, that even if this Court determines the easement is an easement appurtenant and evidence of tacking is permissible, the district judge erred by considering evidence of tacking that was not part of the evidentiary record. Essentially, the Sales argue that a number of Property Owners have not owned their Mack's Creek property for the prescriptive period and none of the predecessors in interest testified; therefore, any evidence of tacking the trial court considered was based on inadmissible hearsay.

■ The prescriptive period in Idaho is five years. I.C. § 5–203.[2] Therefore, each Property Owner must prove that he or his predecessors used the roadway across the Sales' property for some uninterrupted five-year period of time before the suit was filed. *See State ex rel. Haman v. Fox*, 100 Idaho 140, 146, 594 P.2d 1093, 1099 (1979) (holding I.C. § 5–208 "in effect gives an owner five years to take the necessary and appropriate legal action to have an unauthorized use of property stopped"). Tacking is the concept that allows the current owner to combine his or her prescriptive use with that of a previous owner, in order to meet the five-year statutory requirement. Thus, a claimant who has not owned the subject property for the statutory period "may rely on the adverse use by the claimant's predecessor for the prescriptive period, or the claimant may combine such predecessor's use with the claimant's own use to establish the requisite five continuous years of adverse use." *Marshall v. Blair*, 130 Idaho at 680, 946 P.2d at 980 (citations omitted).

2. The common law has adopted the prescriptive period from an analogy to the statute of limitations. *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). I.C. § 5–203 provides:

No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appears that the plaintiff, his ancestor, predecessor or grantor, was seized or possessed of the property in question within five (5) years before the commencement of the action; and this section includes possessory rights to lands and mining claims.

The present action commenced on March 31, 2000, when the Property Owners filed suit. Thus, each of the Property Owners must establish the requisite prescriptive use for some continuous five-year period prior to March 31, 2000, and evidence of a predecessor's use or tacking was essential to the claims of any Property Owner who purchased their property after March 31, 1995.

■ The only Property Owners who acquired property in Mack's Creek after March 31, 1995, are Marvenna Hodgins, who purchased her property from Audette in March 1996 and the Covers, who purchased a second parcel of property in Mack's Creek from the Longbottoms in June 1998.[3] The Covers needed to present evidence of tacking as to their second parcel if they wanted to claim an easement appurtenant to that property. Because there was no evidence produced at trial regarding use of the Sales' property by the Longbottoms, the Covers have not met the minimum requirements of five years of continuous use with respect to their second parcel. They can, however, claim an easement across the Sales' property based upon their other parcel in Mack's Creek, purchased from Vicky Duncan in May 1994.

■ There is competent evidence in the record to support Marvenna Hodgins' claim. Marvenna Hodgins purchased her property from Audette and, at trial, Nathan Seybold, Leslie Roundy, Virden Seybold, Velma Seybold, and Tim Seybold each testified that they had personally observed Audette use the Sales' property. In addition, Tim and Gina Seybold testified as to taking certain actions on Audette's behalf, including road maintenance and maintenance of the power plant, on the Sales' property. Finally, Audette built the power plant servicing the parcel currently owned by Marvenna Hodgins, and there was ample evidence in the record regarding the frequent maintenance required to keep the hydroelectric power generator going. For the above reasons, there was sufficient evidentiary support for the district judge to conclude that Marvenna Hodgins' predecessor in interest, Audette, had used the Sales' property and, therefore, Audette's ownership of the property could be tacked to Marvenna Hodgins' ownership in order to meet the five-year prescriptive period.

Nonetheless, there was some evidence that Audette's use of the Sales' property was permissive, and the trial court did not address Audette's use of the property in its findings. Further, as discussed below, the trial court erred generally in its analysis of adverse use. Therefore, on appeal, this Court determines (1) the Covers cannot demonstrate prescriptive use for the statutory period regarding the parcel of property purchased from the Longbottoms and (2) Marvenna Hodgins may be able to establish prescriptive use for the statutory period provided that the district judge makes necessary findings regarding Audette's use of the Sales' property.

## C. The District Judge Erred in the Analysis of Adverse Use.

■ Adverse use, also referred to as hostile use or use under a claim of right, is just one of the five elements necessary to establish a prescriptive easement. Adverse use has been characterized as an actual invasion or infringement made without permission of the owner. *Simmons v. Perkins*, 63 Idaho 136, 140, 118 P.2d 740, 744 (1941); *Melendez v. Hintz*, 111 Idaho 401, 724 P.2d 137 (Ct.App.1986). "Under a claim of right means that the claimant has used the way without recognition of the rights of the owner of the servient tenement." *Marshall v. Blair*, 130 Idaho at 680, 946 P.2d at 980. The nature of the use is characterized as hostile in that it runs contrary to the servient owner's claims to the property. *Id.* However, the state of mind of the claimant is not controlling; the focus is upon the nature of

---

**3.** Evidence of tacking is not essential to the claims of (1) Leslie Roundy, who purchased his property in August 1980; (2) Nathan Seybold, who purchased his two parcels in September 1990 and April 1991; (3) Tim Seybold, who purchased his property in February 1989; (4) Gina Seybold, with regard to the separate property she purchased in January 1993 and subsequently sold in November 2000; (5) Virden and Elva Seybold, who purchased their property in September 1990; and (6) Elizabeth Von Schoonhoven, who purchased her property in June 1989.

the claimant's use. *Cardenas v. Kurpjuweit*, 116 Idaho 739, 740, 779 P.2d 414, 415 (1989).

Although clear and convincing proof of each of the elements necessary to establish a prescriptive easement is generally essential to a claim, there is a shortcut in terms of proving adverse use. Without evidence of how the use of the property began, proof of open, notorious, continuous and uninterrupted use for the prescriptive period raises a presumption that the use was adverse and under a claim of right. *Id.* The burden then shifts to the owner of the servient estate to demonstrate that the claimant's use was permissive. *Id.* This presumption does not apply where the claimed easement is over wild and unenclosed lands. *Cox v. Cox*, 84 Idaho 513, 518, 373 P.2d 929, 934 (1962). Rather, where the easement alleged is over wild and unenclosed lands, there is a rebuttable presumption that use of such lands is permissive, and the burden is on the party asserting the easement to establish adversity. *Marshall v. Blair*, 130 Idaho at 680, 946 P.2d at 980. Proof of independent, decisive acts, such as maintenance of the way, tearing down barriers, and other indications of separate and exclusive use is sufficient to rebut a presumption of permissive use. *Marshall v. Blair*, 130 Idaho at 680–681, 946 P.2d at 980–981; *Simmons v. Perkins*, 63 Idaho 136, 140, 118 P.2d 740, 744 (1941).

In resolving the adversity issue, the district judge seemed to weigh competing assumptions. Initially, the district judge determined the presumption of adverse use should apply, because the origin of the road was unknown. Then, she stated the presumption of permissive use actually applied, because all parties agreed the easement was located upon wild and unenclosed land. Ultimately, the district judge apparently resolved these competing presumptions by determining the Property Owners' actions in maintaining the uppermost portion of the road over the Sales' property was sufficiently adverse to create a prescriptive easement. This analysis was in error.

The district judge erred first in determining the origin of the road was unknown. All parties essentially concede the road was originally a Forest Service road. Thus, the determination regarding a presumption of adversity is wrong.

In addition, the trial court also erred in determining the acts of road maintenance were sufficient to rebut the presumption of permissive use. Acts of maintenance, even prior to the formation of the Mack's Creek Property Owners' Association, demonstrate only that the landowners were interested in pooling their resources and contributing money in order to keep the road open and collectively handle maintenance issues. Unless there is some specific information that the Sales or their predecessors refused to participate, the road maintenance is clearly permissive and certainly is not enough to rebut a presumption of permissive use.

## D. The District Judge Correctly Found There Was No Express Easement.

The Property Owners ask this Court to uphold the trial court's decision holding the Property Owners have an easement to use the road traversing the Sales' property on the alternative basis of easement by express grant.[4] However, we hold that the district judge correctly determined there was no express easement created in the Sales' property for the benefit of the Property Owners.

The district judge rejected the Property Owners' claim for an easement by express grant on the basis of current Idaho law, which provides that the reservation of an easement in a deed creates an easement on behalf of the grantor only. *Davis v. Gowen*, 83 Idaho 204, 209–210, 360 P.2d 403, 408–409 (1961). This is based on the rule that a reservation to a stranger to the instrument is void for all purposes. *Id.*

---

4. Because the Property Owners seek to reverse a portion of the district court's judgment, specifically that part relating to their easement by grant claim, the Sales argue, the Property Owners effectively seek affirmative relief and must file a timely cross-appeal in order for the Court to entertain their arguments. However, because the Property Owners do not seek any relief in addition to that achieved at trial, specifically a holding that the Property Owners have an easement right in the road crossing the Sales' property, the Sales argument is unpersuasive.

We need not address the *Davis* issue, but instead find there is no express easement, because the language the Property Owners rely on is too vague and fails to provide a sufficient description of the property to sustain a claimed easement. At a minimum, a valid easement must identify the land subject to the easement and express the intent of the parties. *See Northwest Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 181, 646 P.2d 422, 423 (1982) (citing *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954)). Here, the language of the deed is insufficient, neither reserving nor granting any type of easement.

### E. Neither Party is Entitled to Attorney's Fees on Appeal.

On appeal, both parties claim attorney's fees pursuant to I.C. § 12–121. Neither are entitled to fees because this appeal raised important issues and was not brought or defended frivolously or without foundation.

## IV.

## CONCLUSION

Because the district judge erred by failing to make certain requisite findings and in applying the presumptions of adversity incorrectly, the decision is vacated and the case is remanded to the district judge for the purpose of making the requisite findings based on the evidence previously submitted. We award costs on appeal to Appellants.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.