838 P.2d 878

**O'Neal L. BURNS and Isabelle Burns, husband and wife, Plaintiffs–Appellants,**

v.

**Donald ALDERMAN, Sr., Mrs. Donald Alderman, Sr., and Donald Alderman, Jr., Mrs. Donald Alderman, Jr., Defendants–Respondents.**

No. 19164.

Court of Appeals of Idaho.

Oct. 2, 1992.

Craig R. Wise, Coeur d'Alene, argued for appellants.

Jenkins and Leggett, Coeur d'Alene, for respondents. Ida R. Leggett argued.

WALTERS, Chief Judge.

This case arises from a dispute over the rights of Peggy and Donald Alderman, Jr., (the Aldermans) to use a private roadway running through a real estate subdivision. The Aldermans own a lot in the subdivision, but use the roadway to access another parcel located adjacent to, but outside of, the subdivision. O'Neal and Isabelle Burns, who also own property within the subdivision, filed this action seeking to enjoin the Aldermans from using the roadway, alleging that the Aldermans' activities constituted a misuse of the easement rights granted to the subdivision's lot owners. The district court dismissed the action, concluding that the Aldermans have an independent right of easement under a prior

deed. For the reasons explained below, we vacate the judgment of dismissal and remand to the district court for additional findings on the Aldermans' alternative claim of a prescriptive right of easement.

## Facts and Procedural Background

The following facts, found by the district court, are not challenged on appeal. The disputed roadway, Seasons West Road, leaves a county road and runs west to east through the small real estate subdivision known as Seasons West, near Rathdrum, Idaho. Six of the subdivision's twelve lots are located to the north of Seasons West Road and six to the south. The roadway and lots, numbered 1 through 12, are depicted in the accompanying sketch.

In April of 1977, the owner and developer of the subdivision, National Associated Properties, Inc., formally created an easement over Seasons West Road (the NAP easement), granting a forty-foot right-of-way [1] "for the benefit of and appurtenant to each and every part of the subject legal description," the subject legal description being the legal boundaries of the Seasons West subdivision. The easement was created so that all lot owners in the subdivision had common rights and obligations concerning the right-of-way. Each lot owner became, at the same time, the owner of both a dominant tenement and a servient tenement.

Donald Alderman's parents, Nancy and Donald Alderman, Sr., (the senior Aldermans),[2] owned several parcels in Seasons West, including Lot 2, located next to and west of Lot 1. In 1978, the Aldermans purchased a lot in the Hillsdale Ranchettes

---

1. The width of the actual roadway is between twenty and twenty-two feet.

2. The district judge dismissed all claims asserted against the senior Aldermans, and also dismissed the counterclaims asserted by them. No appeal is taken from those rulings.

subdivision, which is located adjacent to and north of the Seasons West subdivision. Their lot, marked as Lot B, abuts Lot 1 in the Seasons West subdivision. The Aldermans soon began constructing a dwelling house on their lot, accessing their property using Seasons West Road to travel to Lot 1, and then travelling north along a power line access road across Lot 1 to reach Lot B. They did not seek permission from any of the lot owners in the Seasons West subdivision to use that route to access their property. This situation continued until some time in 1986, when the Burns acquired Lot 1. Neighborly relations between the Burns and the Aldermans deteriorated rapidly, until the Burns forbade the Aldermans to use the power line access road to cross their property (Lot 1), and constructed a fence blocking the route.

Anticipating the closure of the power line route, the Aldermans obtained an alternate route to access their property. They purchased an easement over the southeastern corner of the property of their neighbor to the west, Mr. Kish (marked "Kish" in the sketch). The senior Aldermans then created a tenancy in common with the junior Aldermans with respect to Lot 2. Under this arrangement, the Aldermans accessed Lot B using Seasons West Road to reach Lot 2, then proceeding north across Lot 2 to the Kish parcel, and then over the Kish easement to Lot B.

The Burns filed a complaint seeking to enjoin the Aldermans from using Seasons West Road, claiming that the Aldermans' use of the roadway to access Lot B constituted a misuse of the NAP easement. In response, the junior Aldermans asserted that as owners of Lot 2, they had a right to use the NAP easement to access Lot 2, and argued that once on Lot 2 they could proceed to Lot B using the Kish easement. Alternatively, the Aldermans claimed a prescriptive right of easement over Seasons West Road, having continuously used that roadway to access Lot B for more than five years.

Following a trial without a jury, the district court concluded that the Aldermans were not entitled to use the NAP easement to access Lot B, and that they had failed to establish an easement by prescription. However, the court went on to consider the Aldermans' rights under a preexisting easement contained in a warranty deed executed in 1974 by Gerald and Betty Gladish. In that deed, the Gladishes conveyed what is now known as the Seasons West subdivision to Robert and Bonnie Silhavy, but specifically reserved to themselves, their heirs and successors, "an easement 25 feet in width for ingress and egress to and from adjoining property along, across and over the existing roadway of the above-described property." The judge construed the deed as creating an easement for the benefit of all properties adjoining the Seasons West subdivision, including Lot B located in the adjoining Hillsdale Ranchettes subdivision to the north. The court further concluded that the Aldermans were successors in interest to the Gladishes' right of easement, and that they therefore were entitled to use Seasons West Road to access Lot B. Based on these determinations, the district judge decided that an injunction was inappropriate and dismissed the Burns' complaint. The Burns appeal.

As explained below, we agree that the district court erroneously dismissed the Burns' complaint. We reverse the court's ruling that the Aldermans have an independent right of easement, as that conclusion is founded on an erroneous construction of the Gladish deed. However, we further conclude that the district judge's findings were insufficient to support its denial of the Aldermans' claim to a prescriptive right of easement, and accordingly we remand the case for additional findings on that issue.

### Standard of Review

In an appeal such as this, we are presented with mixed questions of law and fact. As to findings made by the district court, we will defer to those that are supported by substantial evidence. I.R.C.P. 52(a). However, we exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts

found. *Isaak v. Idaho First Nat. Bank,* 119 Idaho 988, 989, 812 P.2d 295, 296 (Ct. App.1990), *aff'd,* 119 Idaho 907, 811 P.2d 832 (1991); *see also Roberts v. Swim,* 117 Idaho 9, 12, 784 P.2d 339, 432 (Ct.App. 1989).

### The Gladish Deed

The district court held that the Aldermans are entitled to use Seasons West Road to access Lot B under the 1974 Gladish–Silhavy warranty deed. In that deed, the Gladishes granted real property, described as what is now known as the Seasons West subdivision, to the Silhavys, specifically reserving to themselves, their heirs and successors, an easement over the existing roadway "for ingress and egress to and from adjoining property." The reservation language does not describe the property to which the easement is appurtenant, other than by the reference to "adjoining property." The district court construed the language in the deed as creating an easement appurtenant, with the dominant tenement consisting of all lands adjoining the Seasons West subdivision, including Lot B which adjoins the Seasons West subdivision to the north. The court further concluded that the Aldermans had a right to use the easement to access that property as successors to the Gladishes' interest in Lot 2. The Burns contend that the district court's construction of the deed language is contrary to the law and unsupported by the evidence of record, and the court's conclusion that the deed provides the Aldermans an independent right of easement therefore should be reversed. The Burns additionally challenge the court's determination that Aldermans are successors to the easement rights of the Gladishes. As to both of these contentions, we agree.

■ In construing an easement in a particular case, the instrument creating the easement is to be interpreted in connection with the intention of the parties, as evidenced by the language employed and the circumstances in existence at the time the easement was granted. *See Villager Condominium Ass'n v. Idaho Power Co.,* 121 Idaho 986, 988, 829 P.2d 1335, 1337 (1992); *Kolouch v. Kramer,* 120 Idaho 65, 69, 813 P.2d 876, 880 (1991); *Nelson v. Johnson,* 106 Idaho 385, 679 P.2d 662 (1984); *Latham v. Garner,* 105 Idaho 854, 673 P.2d 1048 (1983). Our inquiry in the instant case focuses on whether the district judge properly construed the deed as creating an easement to benefit Lot B, which adjoins the Seasons West subdivision to the north.

■ An easement appurtenant must bear some relation to the use of the dominant estate and is incapable of existence separate from it; any attempted severance from the dominant estate must fail. *See Nelson,* 106 Idaho at 387, 679 P.2d at 664. As a review of the sketch of the property makes clear, the Gladishes' reserved easement over the west-to-east-running roadway does not provide a way of "ingress or egress to or from adjoining property" to the north of the Seasons West subdivision, but rather provides a way of accessing property adjoining the subdivision to the east. Moreover, the only evidence presented on this point tends to show that, at the time of the conveyance to the Silhavys, the Gladishes retained property adjoining the Seasons West subdivision to the east. There is nothing in the record indicating the Gladishes ever owned property to the north. Consequently, while the record sufficiently supports a construction that the Gladishes reserved a right of easement to access property adjoining the Seasons West subdivision to the *east,* it is wholly insufficient to support a construction that the easement was intended to benefit property adjoining the subdivision to the north, that is, to benefit Lot B.

■ Furthermore, the facts do not sustain the lower court's conclusion that the Aldermans otherwise succeeded to the easement rights of the Gladishes, as rights to an easement appurtenant pass with the *dominant* tenement, *Nelson,* 106 Idaho at 387, 679 P.2d at 664; the Aldermans are successors to the Gladishes' interest in the *servient* tenement, only. Even if the deed language could reasonably be construed as creating an easement in gross for the benefit of all "adjoining property," including

Lot B to the north, such easement rights would have been personal to the Gladishes, and consequently would not have passed with the land to the Aldermans. *See Nelson*, 106 Idaho at 387, 679 P.2d at 664.

Accordingly, the district court's conclusion that the Aldermans had rights under the Gladish deed to use Seasons West Road was in error and must be reversed. This determination leaves the case in the posture that the Burns' claim for relief, and the Aldermans' response to that claim, should be revisited in order to consider whether the result obtained in the district court may be upheld on any alternative theory. In this regard, neither party challenges the district court's denial of Aldermans' claim based on the NAP easement, and the court's conclusion appears correct. *See* 2 THOMPSON ON REAL PROPERTY, § 386, at 539 (1980). However, we conclude that the court erred in its review of the law applicable to the claim of easement by prescription. We thus turn to the question of whether the Aldermans established a right to use the roadway by prescription.

### Prescriptive Easement

In order to establish a private prescriptive easement, a claimant must submit reasonably clear and convincing proof of open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner of the servient tenement, for the prescriptive period of five years. I.C. § 5–203; *Chen v. Conway*, 121 Idaho 1000, 1005, 829 P.2d 1349, 1354 (1992); *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973). If the roadway's use was adverse for *any* continuous five-year period, that use can establish a prescriptive right to the continued use of the road. *Burnett v. Jayo*, 119 Idaho 1009, 1012, 812 P.2d 316, 319 (Ct.App.1991). However, a prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, as such use clearly is not adverse to the rights of the owner. *State ex rel. Haman v. Fox*, 100 Idaho 140, 143, 594 P.2d 1093, 1096 (1973); *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973); *Melendez v. Hintz*, 111 Idaho 401, 724 P.2d 137 (Ct.App.1986).

The general rule in Idaho is that proof of open, notorious, continuous, uninterrupted use of the way for the prescriptive period, *without evidence as to how that use began*, raises the presumption that the use was adverse and under a claim of right. Upon such a showing, the burden shifts to the owner of the servient tenement to prove that the use was permissive, or by virtue of a license, contract, or agreement. *West*, 95 Idaho at 557, 511 P.2d at 1333. However, a different presumption applies if the evidence establishes that the roadway was constructed by the owner of the servient tenement for his own use and has been used jointly by the claimant and owner. Where the claimant's use does not interfere with rights of the owner, the law presumes that the use is *not* adverse but by way of license or permission. *Chen v. Conway*, 121 Idaho 1006, 1008–09, 829 P.2d 1355, 1357–58 (Ct.App.1991), *aff'd*, 121 Idaho 1000, 829 Idaho 1349 (1992); *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941). As stated in the noted treatise by Professor Thompson,

> A right by prescription to pass through a way or alley, belonging to the owner of adjacent property and kept open for the owner's own use or the use of his tenants is not acquired by one who merely passes through it and has continued to do so for many years, without doing any adverse act, such as making repairs or giving the owner any notice of a claim to pass over the [way] as a matter of right, as distinguished from a mere license or permission of the owner.

2 THOMPSON ON REAL PROPERTY § 341, at 204. The fact that the owner of the servient tenement, or others, by his permission, use the land for purpose of passage, or that another person has a right-of-way by grant, does not prevent the acquisition of a right-of-way over the same roadway by another person. *Id.*, at 219. The presumption of permissiveness may be rebutted by evidence showing that the use made of such a way for the prescriptive period was not "in common" with that of

the owner, but constituted an actual infringement or invasion of the owner's rights. *Chen,* 121 Idaho at 1010, 829 P.2d at 1359; *Melendez,* 111 Idaho at 405, 724 P.2d at 141.

■ In this case, the trial judge concluded that no prescriptive right had been established, reasoning that "[t]he very fact that the junior Aldermans subsequently obtained common ownership in Lot 2 and an easement over the Kish property clearly negates any use of either property for the five-year prescriptive period under any claim of right." The lower court's conclusion is misdirected, as the Aldermans do *not* assert a prescriptive right over the two referenced lots. Moreover, we fail to see how their acquisition of rights over these lands negates or otherwise affects their claim to a prescriptive easement *over Seasons West Road.*[3] The district judge's basic findings, and the undisputed evidence, clearly establish that the Aldermans have openly, continuously, and uninterruptedly, used Seasons West Road to access Lot B since they acquired it in 1978—well over the five-year statutory period.

■ Absent from the record, however, are the necessary findings on the factual question of whether the Aldermans' use of Seasons West Road was adverse and under claim of right, or whether the use was permissive.

> When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.

Standards of Appellate Review in State and Federal Courts, IDAHO APPELLATE HANDBOOK § 3.3.5.2 (Idaho Law Foundation, Inc.1989), *quoting Pullman–Standard v. Swint,* 456 U.S. 273, 291–92, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982). The absence of material findings may be disregarded by the appellate court *only*

where the record is clear, and yields an obvious answer to the relevant question. *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Barring such circumstances, the case is to be remanded to the trial court for additional findings. *Pope,* 103 Idaho at 225, 646 P.2d at 996; *see also Chen v. Conway,* 121 Idaho 1000, 1005, 829 P.2d 1349, 1354 (1992).

The record in this case is not clear and does not yield an obvious answer to the factual question necessary to determine whether the Aldermans' use of the roadway was adverse or permissive. Specifically lacking are findings on the questions of whether the facts give rise to a presumption of either an adverse use or a permissive use of the roadway, and, if one of the presumptions is applicable, whether there is evidence sufficient to rebut it. Nor does the record provide findings on the question of whether the owners of the servient estate had notice of the Aldermans' claim of right. Therefore, we vacate the judgment dismissing the Burns' complaint and remand the case to the district court for the additional findings and conclusions necessary for a determination of the Aldermans' prescriptive easement claim.

### Conclusion

The judgment dismissing the Burns' complaint is vacated. The case is remanded to determine whether the Aldermans have established, by clear and convincing evidence, a prescriptive right of easement over Seasons West Road, or whether the injunctive relief sought by the Burns' should be granted.

Costs to the appellants, O'Neal and Isabelle Burns. No attorney fees are awarded on appeal.

SWANSTROM and SILAK, JJ., concur.

---

**3.** At the conclusion of the evidence and prior to the court's issuance of its findings and conclusions, the court requested additional briefing on the question of whether the junior Aldermans had established a prescriptive right to use Seasons West Road to access Lot B. However, these briefs were not made part of the record on appeal.